# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| LASHANDA STEPLIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-00742-DCN |
| vs. ) | |
| ) | **ORDER** |
| PROGRESSIVE NORTHERN INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The following matter is before the court on plaintiff Lashanda Steplight's ("Steplight") motion in limine, ECF No. 21. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

Progressive Northern Insurance Company ("Progressive") issued a policy of personal automobile insurance to Steplight, policy number 934124623, with effective dates of November 6, 2019 to May 6, 2020 (the "Policy"). The Policy lists a 2014 Audi Q5, VIN no. WA1LFAFP0EA048048, as an insured vehicle and provides liability coverage for bodily injury up to $25,000 per person and $50,000 per accident and property damage up to $25,000 per accident. The Policy also provides comprehensive coverage up to the actual cash value of the vehicle and rental reimbursement coverage up to $40 per day for thirty days.

Steplight's policy lapsed effective October 4, 2019. She went uninsured between October 4, 2019 and November 6, 2019. Steplight alleges that her insured vehicle was stolen on or about November 12, 2019—after her insurance coverage was reinstated.

1

Progressive investigated the claim and interviewed multiple witnesses who, according to Progressive, provided conflicting and inconsistent statements regarding the timeline and details surrounding the alleged theft. Progressive avers that the conflicting information indicated that Steplight's vehicle may have been stolen prior to the November 6, 2019 effective date of the Policy.

Thereafter, on December 12, 2019, Progressive sent Steplight a letter requesting: (1) independent verification that she had possession of the insured vehicle after the policy's inception, and (2) independent verification that she was out of town at the time of the alleged theft. Steplight allegedly failed to provide this information. On December 19, 2019, Progressive sent Steplight a letter outlining its coverage position in light of its investigation. At that time, Progressive denied coverage for her theft claim. Steplight's car was recovered in Spartanburg, South Carolina in January 2020.

Steplight filed the instant lawsuit on January 10, 2020 in the Charleston County Court of Common Pleas. ECF No. 1-1, Compl. Progressive removed the action to this court on February 17, 2020. ECF No. 1. Steplight asserts breach of contract, bad faith, and negligence causes of action against Progressive. On December 22, 2021, Steplight filed a motion in limine. ECF No. 21. On January 5, 2022, Progressive responded in opposition. Steplight did not file a reply, and the time to do so has now expired. The court held a hearing on the motion on January 7, 2022. ECF No. 34. After that hearing, the court emailed the parties requesting supplemental briefing. On January 21, 2022, Progressive and Steplight filed their supplemental briefings. ECF Nos. 36 & 37, respectively. As such, the motion is now ripe for the court's review.

## II.  DISCUSSION

Steplight requests that the court instruct Progressive not to offer as evidence, ask questions related to, make reference to, or otherwise use at trial any information related to four topics enumerated in her motion: (1) hearsay, (2) Steplight's subsequent motor vehicle theft, (3) Steplight's criminal record, and (4) evidence subsequent to Progressive's denial of her claim.  The purpose of a motion in limine is to obtain a preliminary ruling on the admissibility of a particular evidentiary matter.  Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  A court will exclude evidence on a motion in limine only if the evidence is "clearly inadmissible for any purpose."  Hall v. Sterling Park Dist., 2012 WL 1050302, at *2 (N.D. Ill. Mar. 28, 2012).  Progressive agrees to exclude testimony and evidence regarding Steplight's second and third topics for efficiency purposes.  Therefore, the court only discusses the parties' arguments regarding hearsay and post-denial evidence in turn below.

### A.  Hearsay

Steplight first asks that the court preclude the use of statements made by a witness, Michael Herman ("Herman"), regarding his review of a security video recording. Herman is an employee of the North Charleston Sewer District.  The North Charleston Sewer District is located across the street from the home of Steplight's father, Norris Steplight.  According to Progressive, Steplight claimed that her vehicle was stolen from her father's home while she was out of town from November 9, 2019 to November 12, 2019.  Progressive spoke with Herman to determine if the North Charleston Sewer District obtained any surveillance footage that showed the home or her vehicle during the relevant time period.  Herman told a Progressive representative that a surveillance camera

3

captured images of Steplight's father's home but did not reveal the presence of Steplight's vehicle during the relevant time period. Progressive maintains that it relied in part on Herman's report of the video recording in denying Steplight's claim. Steplight argues that because Progressive never viewed the video, any statements from Herman about the video constitute inadmissible hearsay.

Progressive concedes that none of its representatives, employees, or agents reviewed the surveillance footage at issue. Progressive explains that when it requested a copy of the footage, Herman advised that the footage operated on a one-week loop and that the footage for the time period in question was no longer available. Progressive argues that the contents of the video and conversations regarding those contents are not hearsay because they will not be offered for the truth of the matter asserted. Specifically, Progressive would not offer evidence of the conversation between one of its adjusters and Herman as proof that Steplight's vehicle was not at her father's home during the time Steplight claimed she was out of town or that the theft did not occur from that location at the time Steplight alleges. Instead, Progressive intends to use Herman's comments about the video to show what information Progressive relied upon in denying Steplight's theft claim, so that the jury can evaluate whether that denial was reasonable. Progressive additionally argues that excluding evidence of Herman's statements to Progressive regarding the video footage would require redactions in the denial letter Progressive sent to Steplight on December 19, 2019, which the parties have indicated they intend to introduce as an exhibit at trial. Progressive maintains that these redactions could unfairly prejudice Progressive and confuse and mislead the jury. See Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may

require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").

At the outset, the court finds that testimony from Herman regarding the contents of the video surveillance is not barred by the rule against hearsay. Notably, the parties do not identify any statement in the video footage, and mere footage of Steplight's house without the car is not a statement and therefore not hearsay. See Bean v. Costco Wholesale Corp., 2021 WL 4263324, at *3 (E.D. Cal. Sept. 20, 2021) (noting that "as the surveillance video is without sound and conveys only conduct, Defendant fails to address the preliminary question of whether any of the conduct in the surveillance video is a statement within the meaning of the Federal Rules of Evidence" and ultimately concluding that "the conduct portrayed by the surveillance video is not a statement and therefore not hearsay"). During the hearing, Progressive explained that it has subpoenaed Herman and currently intends to call Herman to testify at trial. If either party calls Herman as a witness at trial, Herman will be permitted to testify about what he saw on the video recording. To the extent Progressive intends to elicit testimony from a Progressive representative regarding conversations with Herman, or otherwise introduce Herman's statements by means other than Herman's live testimony, the court will permit such evidence for purposes other than the truth of the matter asserted. The information Progressive relied on in denying Steplight's claim is central to this action, and it would be unfair and confusing to preclude Progressive from introducing all evidence of that information. The court accordingly will allow evidence of Herman's statements regarding his review of the video footage for the purpose of explaining Progressive's investigation and its corresponding reasons for denying coverage. Any hearsay concerns

can be cured by a limiting instruction. The parties may submit such a limiting instruction at the appropriate time during trial. The court therefore denies the motion as to Steplight's first topic.

### B. Evidence Post-Denial

Steplight also requests that the court preclude as irrelevant any evidence dated after Progressive's denial of her claim on December 19, 2019. Progressive, on the other hand, argues that post-denial evidence is relevant to Steplight's bad faith claim, her breach of contract claim, and its impeachment of Steplight. The court discusses each argument in turn.

First, Steplight argues that post-denial evidence is irrelevant to Progressive's bad faith claim. Bad faith refusal to pay benefits under a contract of insurance requires: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; and (4) causing damage to the insured. Crossley v. State Farm Mut. Auto. Ins., 415 S.E.2d 393, 396–97 (S.C. 1992). Punitive damages may also be recovered if the plaintiff proves the insurer's conduct was willful or in reckless disregard of his or her rights under the contract. Id. at 397.

Steplight maintains that whether an insurance company is liable for bad faith must be judged by the evidence before the company at the time it denied the claim. ECF No. 21 at 3–4. Relying on Howard v. State Farm Mutual Automobile Insurance Co., 450 S.E.2d 582 (S.C. 1994), Steplight submits that "[e]vidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its

refusal." Id. (quoting Howard, 450 S.E.2d at 582). Progressive seemingly concedes that post-denial evidence is not relevant to Steplight's bad faith claim to the extent it is premised on a claim handling theory. See ECF No. 27 at 5 (citing Tadlock Painting Co. v. Maryland Cas. Co., 473 S.E.2d 52, 55 (S.C. 1996)). However, Progressive argues that Steplight's bad faith claim based on a theory of unreasonable denial necessarily requires her to prove that she was entitled to coverage in the first place. ECF No. 27 at 3 (citing Crossley, 415 S.E.2d at 396–97 (outlining the essential elements of a bad faith claim to include a "refusal by the insurer to pay benefits due under the contract" that results from the insurer's bad faith or unreasonable action)). In other words, Progressive argues that if Steplight did not suffer a covered loss during the policy period, there were no benefits "due under the contract," and therefore Progressive's denial of the claim was not unreasonable. The court disagrees with Progressive's interpretation of the applicable law.

Progressive fails to cite any authority that directly supports its argument that post-denial evidence is admissible to disprove bad faith under a claim handling theory—or any theory for that matter. The court finds the Howard decision controlling on the issue. In Howard, the plaintiff filed a lawsuit against her insurer asserting causes of action for bad faith and breach of contract after the insurer denied her medical payments claim. 450 S.E.2d at 584. The insurer denied the plaintiff's claim after she failed to provide requested documentation of the cause of her injuries. Id. The trial court allowed plaintiff's counsel to cross-examine the insurance adjuster concerning her handling of the claim after litigation commenced. Specifically, plaintiff's counsel elicited testimony regarding the adjuster's continued failure to pay the plaintiff's claim after the insurer

7

received the documentation it requested after litigation commenced. See id. Ultimately, the Supreme Court of South Carolina held that the testimony was "clearly prejudicial," as the insurer's actions after denying the claim were not relevant to whether the insurer acted reasonably during the claim investigation and denial. The court observed that,

> [w]hether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time suit was filed. Evidence that arises after the denial is not relevant to the propriety of the conduct of the insurer at the time of its refusal. Likewise, if the insurance company did not specifically deny the claim evidence that arises after the filing of the bad faith claim is not relevant. Thus, testimony concerning the adjuster's handling of the claim after litigation commenced was irrelevant.

Id. Notably, in holding that "whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim" and that evidence arising after the claim is denied is not relevant, the court in Howard did not distinguish between the theories under which a plaintiff brings his or her bad faith claim. Id. Indeed, the court in Howard noted that the plaintiff's bad faith claim involved the "refusal by the insurer to pay benefits due under the contract"—the precise element of the unreasonable denial theory that on which Progressive now relies to distinguish the instant case from Howard. Id. at 586 (reciting the elements of the plaintiff's bad faith claim to include "refusal by the insurer to pay benefits due under the contract"). Therefore, Progressive's reliance on this element to argue that, notwithstanding Howard, post-denial evidence should be admissible to prove bad faith premised on an unreasonable denial is nonsensical. By its very name, the unreasonable denial theory of bad faith requires Steplight to prove the unreasonableness of Progressive's actions, and, following Howard, that reasonableness must be judged at the time it denied Steplight's claim. Accordingly,

8

the court finds that post-denial evidence is not relevant to Steplight's bad faith claim and will not be admissible at trial to prove or disprove that claim. See Jordan v. Allstate Ins. Co., 2016 WL 4367080, at *7 (D.S.C. Aug. 16, 2016), aff'd, 678 F. App'x 171 (4th Cir. 2017) (holding that, under South Carolina law, evidence that was not available to Allstate at the time it denied the plaintiff's demand for coverage was irrelevant); E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co., 2015 WL 12831733, at *2 (D.S.C. June 18, 2015) (finding that evidence relevant to the plaintiff's bad faith claim was limited to files dated up until the defendant denied coverage).

Next, Progressive argues that the post-denial evidence obtained in this case is relevant and admissible with respect to Steplight's breach of contract claim. Upon review, the court finds that Steplight's breach of contract claim is no more than an alleged cause of action for breach of the implied warranty of good faith and fair dealing. The only breach of contract alleged in the complaint is Progressive's breach of its "duty of good faith" in providing coverage at the time of the loss. Compl. ¶ 13. Steplight's supplemental briefing confirms to the court that the only basis for her breach of contract claim is the implied covenant of good faith and fair dealing. Steplight is correct that "there is an implied covenant of good faith and fair dealing in every insurance contract that neither party will do anything to impair the other's rights to receive benefits under the contract." Tadlock Painting Co. v. Md. Cas. Co., 473 S.E.2d 52, 53 (S.C. 1996) (internal citations and quotation marks omitted.). However, "bad faith refusal to pay benefits and breach of implied warranty of good faith and fair dealing are not separate causes of action. Rather, all bad faith actions . . . arise out of the implied warranty of good faith and fair dealing." Ocean Winds Council of Co-Owners, Inc. v. Auto-

9

Owners Ins. Co., 241 F. Supp. 2d 572, 577 (D.S.C. 2002) (citing Tadlock, 473 S.E.2d at 52–53). Therefore, Steplight's "bad faith refusal to pay benefits" cause of action encompasses her theory that Progressive breached the contract by failing to provide her coverage in good faith. Accordingly, the court sua sponte dismisses Steplight's breach of contract claim and need not determine whether post-denial evidence is admissible with respect to that claim.

Finally, Progressive argues that post-denial evidence is admissible as impeachment by contradiction evidence. As the district court in Morris v. Metals USA explained,

> Statements are useful as substantive evidence if they relate to a plaintiff's prima facie case or a defendant's affirmative defenses. Impeachment evidence is used to encourage the trier of fact to look critically at whether the evidence should be believed. In the ordinary case, impeachment evidence has no substantive purpose. However, certain evidence must be classified as enjoying membership in both definitions. Evidence that impeaches by contradiction, and is not collateral, can be both substantively admissible, as well as admissible for its impeachment value.

2011 WL 94559, at *4 (D.S.C. Jan. 11, 2011) (quoting Newsome v. Penske Truck Leasing Corp., 437 F.Supp.2d 431, 434 (D. Md. 2006)).

Progressive explains that Steplight alleged—and testified under oath—that the theft occurred while she was out of town in Columbia, South Carolina and Savannah, Georgia from November 9, 2019 until the early morning hours of November 12, 2019. However, during discovery, Progressive purportedly obtained evidence revealing an ATM withdrawal in North Charleston on November 11, 2019 from Steplight's bank account. Steplight testified in her deposition that she was the only individual with access to her bank account. Progressive also purportedly obtained records revealing that she signed her son into and out of school in North Charleston on November 11, 2019.

Progressive further suggests that the testimony of Steplight's friends and family will directly contradict her testimony regarding her travels. Progressive argues that such post-denial evidence should be admitted as impeachment evidence relating to Steplight's truthfulness about when the theft occurred and substantively as impeachment by contradiction.

Steplight entirely fails to address Progressive's impeachment by contradiction argument. However, the court, as explained supra, does not find that Progressive's proffered post-denial evidence weighs on Steplight's bad faith claim. The only evidence relevant to that claim is that which was before Progressive when it denied her coverage. It is entirely irrelevant whether Progressive later determined that some of the information that Steplight provided was untruthful. To the extent Progressive had reason to believe Steplight's story was untruthful at the time it denied coverage, Progressive, of course, may offer that evidence. However, the evidence that Progressive derived from its investigation after it denied her claim has no bearing on whether Progressive acted with bad faith at the relevant time when it denied her claim. Therefore, while Progressive may use it to impeach Steplight and challenge her truthfulness, that evidence will not be admissible substantively. Progressive makes no other argument that supports the admissibility of post-denial evidence, and therefore the court finds that post-denial evidence is not admissible except to impeach Steplight's testimony. The motion in limine is granted in this respect.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 9, 2022
Charleston, South Carolina**